MORRIS LEVETT *vs.* JACOB SHARP ET AL.

Third Judicial District, Bridgeport, October Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and WOLFE, Js.

Although a corporation is not bound by the unauthorized act of its agent in ordering a body to be built for one of its auto trucks in the hands of a dealer, yet if the corporation, knowing the situation and that the body builder looked to it for payment, took the truck back into its possession with the body attached thereto and afterward disposed of the whole to its pecuniary advantage, it may be held liable, under a count for goods sold and delivered, for the reasonable worth or value of the body, upon the ground or theory of a *quasi*-contract.

The evidence in the present case reviewed and *held* to have warranted a verdict for the plaintiff upon the second count in the complaint, for goods sold and delivered, notwithstanding there was no evidence of an express or apparent agency, which was essential to a recovery under the first count.

Argued October 30th, 1923—decided March 1st, 1924.

ACTION to recover for building a bus body for a motor-truck to be used as a jitney car, brought to the Court of Common Pleas in New Haven County and tried to the jury before *Booth, J.;* verdict and judgment for the plaintiff for $1,195.95, against the defendant International Harvester Company, from which that defendant appealed. *No error.*

The plaintiff claimed damages against the company and in the alternative against Sharp, in case the court

should find that the latter was not the agent of the company. The answer put in issue all of the allegations of the complaint except the allegation in the sixth paragraph of the first count, to the effect that the company denied that Sharp was its agent; this paragraph stands admitted for lack of denial.

A trial was had to the jury at which Sharp offered no defense; he had previously suffered a default. The jury returned a verdict in favor of defendant Sharp and in favor of plaintiff against the defendant company. The latter's motion to set aside the verdict as against the weight of evidence was denied by the court, and the company appeals from the denial of the motion.

Uncontradicted facts in the case are that Sharp was a dealer in auto trucks and also automobiles, and that he handled the trucks made by the company. He maintained a garage and did business in his own name and paid his own rent, with the principal sign at his place of business reading "Sharp's Garage." On December 22d, 1919, he made a written contract with the company, expiring July 31st, 1920, wherein he agreed to purchase and receive delivery of several trucks, among them one designated as "Model F" chassis only, 2,000 lbs. capacity, "146 inch wheel base," at list price of $1,900 each. This contract contained provisions to the effect that the dealer was not the agent in any respect of the company, nor authorized to act as such agent, or to "incur any obligations or make any promises or representations in its behalf"; and also that any property sold should not be delivered before full payment therefor, and that the title to such property should not pass to the dealer until the full purchase price and any notes given therefor should have been paid in cash.

It is also an undisputed fact in the case that the plaintiff constructed the body for the auto bus, and

attached it to the chassis of the truck which was taken to his establishment.

Further facts appear in the opinion.

*Charles J. Martin* and *H. Frederick Day*, for the appellant (defendant International Harvester Company).

*Louis Feinmark*, for the appellee (plaintiff).

KEELER, J.  The verdict of the jury is challenged by the defendant company, on the ground that no testimony exists in the case from which any proper inference may be drawn that Sharp was the agent of the company with authority to contract for the building of the body, and that no other person connected with the company who discussed with the plaintiff the building of the body and payment therefor had authority to bind the company.

Plaintiff supports the correctness of the verdict on three grounds: claiming, in the first place, that the evidence justifies a finding by the jury of actual, express agency for the company on the part of Sharp to enter into a contract for the building of the body in question; secondly, upon the ground of an apparent agency of Sharp to contract, that is, that the company by its acts had induced the plaintiff as a reasonable man to believe that Sharp had authority to act for it in the premises; and thirdly, basing the claim upon the second count of the complaint, that the evidence shows that the company was liable under a *quasi*-contractual duty to pay the plaintiff for merchandise sold, for which the latter clearly expected payment and from which the company derived a pecuniary advantage.

The principal persons connected in any way with the

Levett *v.* Sharp.

company in the various phases of the transaction under examination, were Sharp and Vine. From the testimony of the latter, the jury might reasonably have found that he was a traveling representative of the company, concerned with sales, collections, and in general with keeping in touch with the business of the company over a large territory in New England, including the State of Connecticut, reporting to and working under the direction of a superior who had final authority and with whom all matters of importance were taken up. He testified that he was the head salesman, or head motortruck representative, reporting to his superior at the branch house where he worked, that he kept in touch with Sharp concerning the autotruck for which the plaintiff was building the body, and was especially desirous for payment therefor. It is claimed by the plaintiff that the agency of Vine was of such a scope that he was authorized to appoint Sharp a subagent to procure the building of the body upon the account of the company, and that Sharp in so procuring such building was a direct agent of the company. From the testimony covering the claim of direct agency, we cannot find that the jury would have been justified in finding from the evidence an agency of this character. For quite similar reasons we cannot find from the testimony that the jury would have been justified in finding from the conduct of Vine and Sharp and other employees of the company in their acts in the premises, and particularly from their conversations with the plaintiff, that the company so conducted its business as regards the mission and responsibility of Vine and other employees, as to hold them out as possessing the power to contract with the plaintiff for building the body, notwithstanding the lack of express authority so to do.

Upon the third claim, of a *quasi*-contractual liabil-

ity on the part of the defendant company, we think that the evidence abundantly justifies a verdict founded upon the second count of the complaint for merchandise sold and delivered. From the evidence in the case the jury might not unreasonably have found (indeed could not reasonably have found otherwise) that the truck when taken to the plaintiff's shop belonged to the company, since, by its dealer's contract with Sharp, title to any truck was to remain in the company until the same was paid for, and from Vine's testimony, that he claimed in discussion with the plaintiff that the company owned the truck. Also, it could reasonably have been found that at the time plaintiff received the truck at his shop, it was taken there by an employee of the company accompanied by Sharp, and that the truck had attached to it a tag of the company. Furthermore, it might reasonably have been found that when Sharp made the bargain with plaintiff to build the body, he was accompanied by an employee of the company, one Vrooman, and plaintiff was assured both by Sharp and this employee that the company would pay for the body when completed; and further, that Vine, who was the highest grade employee of the company with whom the plaintiff had discussion throughout the transaction, several times told him that the company owned the truck; also, that when a change was made in the construction of the body with reference to the seating arrangement, three persons, Sharp, an employee of the company, and the customer for the completed jitney bus, were present at plaintiff's place of business, and that Sharp and this employee ordered the change. It might further have been reasonably found that the plaintiff had had difficulty in securing payment for work done for Sharp, that he objected to building the body on the sole credit of Sharp,

Levett *v.* Sharp.

and said so when the order was given to build, and
that he was assured by the employee of the company
who accompanied Sharp that as soon as the job was
completed he would get his money; and was further
informed that if the work done was satisfactory he
could expect further orders from the company. The
disinclination of the plaintiff to rely solely upon the
credit of Sharp is significant, and tends to clarify
much that occurred in the negotiations and discus-
sions had with him from time to time regarding the
transaction, as well as to characterize the original
understanding of the parties. There was every reason
why from what he stated had been his experience
with Sharp, that he should not contract with him alone.
What he said and what he did was in accordance with
the conduct of a prudent business man. Characteriz-
ing a somewhat similar state of affairs, this court in
its opinion in *Plumb* v. *Curtis*, 66 Conn. 154, 167, 33
Atl. 998, observes: "According to the common course
of human conduct, a merchant is not likely to continue
for several months to make almost daily sales on
credit, of goods worth in the aggregate several hun-
dred dollars, to a man who, so far as he knows, is
destitute of any means to pay for them." It is an
admitted fact in the case that after the body was com-
pleted payment was not made, and that for from three
to four months the truck with the body attached
remained in the possession of the plaintiff at his shop,
and that this delay arose from the customer of the
outfit not being ready to accept delivery by reason
of confusion and uncertainty in the jitney business
at New Haven, and that the plaintiff brought suit
against Sharp to recover the value of the body. On
his examination plaintiff testified that he gave direc-
tion to his attorney to sue both Sharp and the com-
pany, and that he supposed that he had sued both of

them until he saw in court the writ and complaint showing that Sharp was the sole defendant. In this action the truck in question was attached as the property of Sharp, and was placed by the attaching officer in a garage next door to the plaintiff's place of business. It is insisted that the fact of suit being thus brought negatives the claim of the plaintiff that he expected to be paid by the company but held it as a creditor of Sharp. The claim is not without plausibility, but it was open to the jury to accept the plaintiff's explanation of the occurrence, and to find from the testimony of the plaintiff, his daughter and that of Sharp, that payment to the plaintiff had been promised by some person in the employ of defendant company. The attachment of the truck was released by substitution of a bond furnished by Sharp.

Vine testified that on one occasion (while the truck was under attachment, although he did not then know of the fact) he visited the shop of the plaintiff, together with a competent mechanic, to get possession of the truck and remove the body therefrom, and that he demanded its possession from the plaintiff. It was testified by the plaintiff that Vine did not demand possession of the truck, but of the whole vehicle including the body, which was refused until payment was made. In any event, the body was not removed from the chassis. The plaintiff further testified that Vine saw him twice with reference to the return of the truck to the company and in reply to the plaintiff's question: "Where do I get my money, I must get from somebody my money," answered: "I have a a customer." The daughter testified that at this interview Vine, in answer to the inquiry of the plaintiff as to where his pay was coming from, answered: "To let him take the truck and they would pay for it." Vine testified that he made the suggestion to

Sharp, that he (Vine) should take the whole outfit and try to sell it. Thereafter Vine did in fact take the truck with the body attached and took it to Albany. Vine further testified that he had authority to take the truck back for the company, and that he had conferred with his superior before he came down. Sharp testified that Vine directed him to get a bond and have the attachment released, because the latter was going to sell the truck in Pittsfield, where he had a customer for it. Sharp further testified that he never had possession of the outfit after the attachment, while Vine testified that he drove it away from in front of Sharp's garage. In any event Vine took possession, and removed the truck with body attached. It does not appear that the plaintiff ever had the truck after the release of the attachment, or took any special interest in it, probably relying upon his bond.

While the testimony above summarized would not prove the direct agency of anyone to bind the company, and while there does not clearly appear in the case such a connection of the various transactions of its employees with the business custom of the company as to justify an apparent and implied agency in anyone to bind it, still the jury might reasonably have found that the plaintiff furnished the body upon a well-founded belief that he was to be paid therefor, that through Vine, who was engaged in a general oversight of the company's affairs in New Haven, and who reported thereon to his superior, the company was advised of the nature of the affair, and finally took the benefit of plaintiff's work in connection with the truck, and hence should pay a reasonable value for the same. *Weinhouse* v. *Cronin*, 68 Conn. 250, 36 Atl. 45; *Summa* v. *Dereskiawicz*, 82 Conn. 547, 74 Atl. 906; *Chesebro* v. *Lockwood*, 88 Conn. 219, 91 Atl. 188. So the jury might properly and lawfully have

found a verdict for the plaintiff on the second count, as has been done through the instrumentality of a general verdict, which, as regards this count, is not contrary to the weight of evidence in the case.

There is no error.

In this opinion the other judges concurred.